CHIEF JUSTICE GRAY
dissenting.
¶35 I respectfully dissent from the Court’s opinion and, indeed, I concede that I erred in joining the Court’s November 15, 2001, order and the briefly stated rationale therein for accepting this case on supervisory control. The rationale advanced in that order was that this case presents “a legal issue which has not previously been decided by this Court and that awaiting a full trial and appeal before resolving that issue would lead to unnecessary expense and delay.” That rationale, on a stand-alone basis, makes this Court a court of first *175 resort-via the exercise of our supervisory control jurisdiction-on every conceivable legal issue on which there is no Montana precedent. Many such issues exist, and they properly should be decided by Montana’s uncommonly competent district courts and brought to this Court on appeal in the usual fashion.
¶36 As to the language in our 2001 order about unnecessary expense and delay, it is sad but true that the judicial system is rife with delays caused sometimes intentionally and sometimes inadvertently by lawyers, and nearly inevitably by overcrowded dockets in most of our district courts. Moreover, the petition for writ of supervisory control in this case was filed on September 5, 2001, and the briefing concluded-and was sent up to this Court by our Clerk-on December 17,2001. The passage of approximately 17 months from then until now hardly advances the notion of avoiding unnecessary delay, particularly since this matter may well be appealed after return to the District Court and a likely trial.
¶37 With regard to the Court’s expanded explanation in its opinion of why this case is appropriate for resolution via supervisory control, it is my view that the more full explanation also is flawed. I agree with the Court’s statements in ¶ 13 that, under Park, we will assume supervisory control where a district court is proceeding based on a mistake of law causing a significant injustice for which an appeal is an inadequate remedy, and that we make such determinations depending on the presence of “extraordinary circumstances.” My response to those statements is to wonder how the District Court could be proceeding under a mistake of law in the present case where, as noted in the order accepting supervisory control, the issue has not previously been decided by this Court and upon which, as a result, there is no controlling authority. Further, as stated above, there is nothing “extraordinary” about issues of first impression. Finally, with regard to the Court’s statements in ¶ 16 about the effects of the admission of improper evidence or improper jury instructions potentially costing Truman in both time and finances, this is true in perhaps hundreds of cases involving evidentiary rulings and jury instructions which come to us on appeal in the ordinary course of events each year. The Court seems to be drifting into accepting supervisory control over nearly any kind of pretrial ruling, whether based on a purely legal conclusion or a discretionary act, where the ultimate result could be a reversal on appeal and the necessity of further proceedings thereafter. Evidentiary rulings, rulings on motions to dismiss or summary judgment, and speedy trial rulings are not “extraordinary circumstances” which *176 create significant injustice for which an appeal is an inadequate remedy.
¶38 To follow the path the Court is taking on exercising supervisory control is unwise and unwarranted. The “costs” of doing so are significant. In the present case, there has been substantial delay pending the Court’s decision on supervisory control, with more delays to come in scheduling further proceedings in the District Court and the remaining possibility of an appeal after trial-together with its own expenses and delay for all concerned. More importantly, each supervisory control petition we accept takes this Court’s time away from the appeal docket, which is our primary “stock in trade,” and delays the opinions in those appeals even longer. Finally, every case we accept on supervisory control spawns yet more petitions which, even if ultimately denied, take time to read and discuss-more time away from other obligations of the Court. I fear that, in the Court’s eagerness to direct the course of litigation in the district courts, we are neglecting and delaying the hundreds of appeals pending before us. We also are intruding far too often into the domain of our district courts which, aside from being inappropriate, merely makes the scheduling of those courts’ overcrowded dockets more difficult.
¶39 It is my view that supervisory control was improvidently granted in this case and, having conceded my own error in signing our 2001 order, I dissent from the Court’s opinion on Issue 1. I would not address Issue 2.